**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
─────────────────────────────────────────

**TRUSTEES OF THE NEW YORK CITY**          **24-cv-3187 (JGK)**
**DISTRICT COUNCIL OF CARPENTERS**
**PENSION FUND, ET AL.,**                  <u>**MEMORANDUM OPINION AND**</u>
                                           <u>**ORDER**</u>
                   **Petitioners,**

            - against -

**PMM CRANES LLC,**

                   **Respondent.**

─────────────────────────────────────────

**JOHN G. KOELTL, District Judge:**

The petitioners seek to confirm an arbitration award pursuant to section 301 of the Labor Management Relations Act of 1947 ("LMRA"), as amended, 29 U.S.C. § 185. The petitioners are employer and employee trustees of multiemployer labor-management trust funds organized and operated in accordance with the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001 <u>et seq.</u>; trustees of a charitable organization established under section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3); and a New York not-for-profit corporation. The arbitration award (the "Award") was issued by arbitrator Jeffrey G. Stein on December 14, 2023, and was rendered pursuant to a collective bargaining agreement (the "CBA") between the New York City District Council of Carpenters (the "Union") and PMM Cranes LLC (the "respondent").

1

The underlying dispute arose out of the petitioners' effort to collect contributions owed to the petitioners by the respondent under the CBA and the petitioners' Policy for Collection of Employer Contributions (the "Collection Policy").

## I.

On or about December 18, 2017, the respondent executed the CBA. Petition ¶ 8, ECF No. 1. The CBA provides that the agreement "shall be renewed automatically for one year intervals . . . unless notice to the other . . . has been provided by either party . . . ." ECF No. 1, Ex. B, Art. XVI. Accordingly, at all relevant times, the respondent has been bound by the CBA with the Union.

The CBA requires the respondent to make weekly contributions to the petitioners for work done by the respondent's employees within the trade and geographical jurisdiction of the CBA. Id. Art. XI, § 1. Pursuant to the CBA, the respondent must also furnish its books and records to the petitioners' designated audit representative when requested by the petitioners for the purpose of auditing that all required contributions have been made. Id. Art. XI, § 2(b). The CBA further binds the respondent to the policies and agreements adopted by the petitioners. See id. Art. XI, § 5.

The Collection Policy established by the petitioners provides for the resolution of disputes regarding collection of

2

delinquent contributions through arbitration. See ECF No. 1, Ex. H. § VI. If an employer refuses to comply with the CBA's audit procedures, pursuant to the Collection Policy, the petitioners

> shall determine the estimated amount of the employer's delinquent contributions based on the assumption that the employer's weekly hours subject to contributions for each week of the requested audit period are the highest number of average hours reported per week for any period of four consecutive weeks during the audit period. . . . A determination under this paragraph shall constitute presumptive evidence of delinquency.

Id. § IV(12). The Collection Policy provides that, should the petitioners be required to arbitrate a dispute or sue over unpaid contributions, the employer will be responsible for: all delinquent contributions; interest on the delinquent contributions; a delinquency assessment, which is the greater of (a) interest on the delinquent contributions or (b) liquidated damages in the amount of twenty percent (20%) of the principal amount of all delinquent contributions; attorney's fees; audit costs; and any other expenses incurred by the petitioners in determining the amount of and collecting the delinquency. See id. §§ IV(11), V(4)-(6).

    The petitioners attempted to conduct an audit of the respondent covering the period beginning March 21, 2021, through the present date. Petition ¶ 22. The respondent failed to produce all the records requested for the audit. Id. ¶ 23. The petitioners then conducted an estimated audit pursuant to the

Collection Policy, which indicated that the respondent had failed to remit contributions to the petitioners in the principal amount of $80,101.20. Id. ¶ 24; see also ECF No. 1, Ex. I. The respondent did not challenge the findings of the estimated audit, and the petitioners initiated an arbitration pursuant to the CBA and Collection Policy. Petition ¶¶ 24-25.

The arbitrator held a hearing on December 13, 2023, where the petitioners were represented by counsel. See Arbitrator's Decision & Award, ECF No. 1, Ex. K. Although the petitioners had provided legally sufficient notice of the hearing to the respondent, the respondent did not attend the hearing or request an adjournment. See id. at 2-3. On December 14, 2023, the arbitrator issued a written Decision and Award, finding that the respondent had violated the CBA. The arbitrator awarded the petitioners a total of $108,853.94, consisting of principal contributions of $80,101.20; interest of $9,832.50; liquidated damages of $16,020.24; attorney's fees of $1,500; court costs of $400; and an arbitration fee of $1,000; plus interest from the date of the Award through the present date at the annual rate of 10.25%. See id. at 7-8. The arbitrator also ordered the respondent to produce books and records for the audit to proceed. Id. at 8. The respondent has not paid any portion of the Award and has not produced the necessary documents for an audit. Petition ¶ 30.

The petitioners request that the Court: (i) confirm the Award; (2) order the respondent to submit to an audit of its books and records for the period beginning on March 21, 2021 through the present date; (3) enter judgment in favor of the petitioners against the respondent for $108,853.94, plus interest at the annual rate of 10.25% from December 14, 2023, to the date of judgment; and (4) enter judgment in favor of the petitioners for $3,348 in attorneys' fees and $115 in costs incurred during this action, the entire amount of judgment accruing post-judgment interest at the rate provided under 28 U.S.C. § 1961(a).

## II.

A district court's role in reviewing an arbitration award is extremely limited. United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 36-37 (1987); United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 596, 598-99 (1960). The Supreme Court has explained that district courts "are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." Misco, 484 U.S. at 36.[1] The Court instructed that "[a]s long as the arbitrator's award 'draws its essence from the collective bargaining

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

5

agreement,' and is not merely 'his own brand of industrial justice,' the award is legitimate." Id. (quoting United Steelworkers, 363 U.S. at 597). Accordingly, an arbitration award is to be confirmed if there is even a "barely colorable justification" for the decision. U.S. Steel & Carnegie Pension Fund v. Dickinson, 753 F.2d 250, 252 (2d Cir. 1985); see also New York City Dist. Council of Carpenters v. Reilly Partitions, Inc., No. 18-cv-1211, 2018 WL 2417849, at *2 (S.D.N.Y. May 29, 2018).

Despite being served with the petitioners' petition, the respondent has not responded. After the respondent's original time to oppose the petition had lapsed, the Court extended the respondent's time to respond until June 17, 2024. ECF No. 12. The Court stated that, if the respondent did not respond by that date, the Court would decide the petition based on the papers that had been submitted by the petitioner. Id. The respondent did not respond.

The Second Circuit Court of Appeals has explained that a default judgment is generally inappropriate in a proceeding to confirm or vacate an arbitration award because "[a] motion to confirm or vacate an [arbitration] award is generally accompanied by a record, such as an agreement to arbitrate and the arbitration award decision itself . . . . [T]he petition and accompanying record should [be] treated as akin to a motion for

6

summary judgment based on the movant's submissions." D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 109 (2d Cir. 2006).

The standard for granting summary judgment is well established. "The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); Darnell v. Pineiro, 849 F.3d 17, 22 (2d Cir. 2017). The substantive law governing the case will identify those facts that are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

### III.

In this action, the arbitrator's award was not the arbitrator's "own brand of industrial justice." Misco, 484 U.S. at 36. Rather, the arbitrator found that "substantial and credible evidence" supported the determination that the respondent owed the petitioners delinquent contributions under the CBA and Collection Policy for the period from March 21, 2021, through December 14, 2023. Arbitrator's Decision & Award, at 7. The uncontroverted evidence established that the respondent was bound by the CBA and Collection Policy, that the

7

respondent had violated the CBA and Collection Policy, and that the respondent thus owed the petitioners $108,853.94 plus post-Award interest, from December 14, 2023, through the present date, at a rate of 10.25%. Id. at 7-8. Furthermore, the arbitrator's decision to order the respondent to produce records for the audit to proceed plainly draws its essence from the Collection Policy, which provides that the petitioners may, "[i]f circumstances warrant, . . . institute legal action to enforce the [petitioners'] right to conduct a payroll review and/or audit." ECF No. 1, Ex. H, § IV(13); see also Trustees of New York City Dist. Council of Carpenters Pension Fund v. Mountaintop Cabinet Mfr. Corp., No. 11-cv-8075, 2012 WL 3756279, at *3, *5 (S.D.N.Y. Aug. 29, 2012).

Based on the limited review that is appropriate of an unopposed petition to confirm an arbitration award, the Court finds that there is no genuine dispute of material fact and that the petitioners' petition should be granted.

The petitioners also seek judgment to recover attorney's fees expended in this action. Courts in this district have observed that "courts have routinely awarded attorneys fees in cases where a party merely refuses to abide by an arbitrator's award without challenging or seeking to vacate it through a motion to the court." Trustees of New York City Dist. Council of Carpenters Pension Fund v. All. Workroom Corp., No. 13-cv-5096,

8

2013 WL 6498165, at *6 (S.D.N.Y. Dec. 11, 2013) (quoting Abondolo v. H. & M. S. Meat Corp., No. 07-cv-3870, 2008 WL 2047612, at *4 (S.D.N.Y. May 12, 2008) (collecting cases)).

The attorney's fees sought by the petitioners are reasonable. The Collection Policy provides, in relevant part, that:

> Attorneys' fees shall be assessed against a delinquent employer, at the same hourly rate charged to the [petitioners] for such services . . . for all time spent . . . in collection efforts or in enforcing the [petitioners'] rights to payroll reviews or audits.

ECF No. 1, Ex. H, § V(6). In support of the petitioners' claim for attorney's fees, the petitioners' counsel submitted an invoice listing the tasks completed, the attorneys' hourly billing rates, and the total hours billed. ECF No. 1, Ex. M. The petitioners seek $3,348 in attorney's fees for 10.8 hours of work, for which the petitioners' counsel billed the services of two associate attorneys at a rate of $310 per hour and the services of a legal assistant at the rate of $155 per hour. See id. The rates billed and time expended on this action by the petitioners' counsel are thoroughly reasonable. See Dist. Council No. 9, Int'l Union of Allied Painters & Allied Trades, AFL-CIO v. Impact Storefront Designs, No. 22-cv-10519, at *3 (S.D.N.Y. June 5, 2023) (approving attorney's fees that billed associates at a rate of $300 per hour); Drywall Tapers & Pointers of Greater New York Loc. Union 1974, IUPAT, AFL-CIO v.

9

Drywall & Acoustics of N.E., Inc., No. 18-cv-11986, 2019 WL 6883897, at *3 (S.D.N.Y. Nov. 27, 2019) (finding that a $300 hourly rate for the services of an associate attorney was reasonable).

Court costs for service and other fees are routinely permitted, and the Court grants the total requested court costs of $115. See New York City & Vicinity Dist. Council of Carpenters v. Plaza Constr. Grp., No. 16-cv-1115, 2016 WL 3951187, at *2 (S.D.N.Y. July 19, 2016) (collecting cases).

The petitioners are also entitled to post-judgment interest on the full amount of the judgment at the rate provided under 28 U.S.C. § 1961(a). See Lewis v. Whelan, 99 F.3d 542, 545 (2d Cir. 1996) ("The award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered." (citing 28 U.S.C. § 1961(a))).

## CONCLUSION

For the reasons explained above, the petition to confirm the arbitration award is **granted** and the underlying arbitration award is ordered confirmed.

The Clerk is respectfully directed to enter judgment in favor of the petitioners and against the respondent in the amount of $108,853.94, plus interest from December 14, 2023, the date of the arbitration award, accrued at an annual rate of

10.25% until the date of judgment. The Clerk is also directed to enter judgment in the amount of $3,348 in attorney's fees and $115 in costs. Post-judgment interest on the entire amount of the judgment will accrue from the date of the judgment at the rate provided by 28 U.S.C. § 1961(a). The respondent is ordered to submit to an audit of its books and records for the period beginning March 21, 2021, through the present date. The Clerk is directed to close this case.

**SO ORDERED.**

**Dated:**   New York, New York
             October 3, 2024

                                    _____
                                    John G. Koeltl
                                    United States District Judge